UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILLIAM P.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 3:25-cv-05499-JNW<br><br>ORDER REVERSING AND REMANDING COMMISSIONER'S DECISION |

Plaintiff William P. seeks judicial review of the Commissioner's denial of his application for disability insurance benefits under the Social Security Act. He contends that the administrative law judge ("ALJ") erred by (1) failing to give specific, clear, and convincing reasons for rejecting Plaintiff's testimony; (2) improperly rejecting the opinions of David Widlan, Ph.D; and (3) improperly evaluating the opinions of Bruce Duthie, Ph.D. The first two contentions have merit; the third does not. The Court REVERSES and REMANDS the Commissioner's denial of benefits for further proceedings.

## 1. LEGAL STANDARD

"Under 42 U.S.C. § 405(g), this Court may overturn the Commissioner's denial of social security benefits if the ALJ's decision rests on legal error or is not supported by substantial evidence." *Elizabeth G. v. Comm'r of Soc. Sec.*, No. C24-2025-MLP, 2025 WL 1519230, at *1 (W.D. Wash. May 27, 2025) (citing *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (citation modified)). "In applying this standard, the Court must consider the record as a whole to determine whether it contains sufficient evidence to support the ALJ's findings." *Id.*

The ALJ is responsible for resolving ambiguities in the medical evidence, and if the evidence can be interpreted in more than one rational way, the ALJ's decision must be upheld. *Smartt*, 53 F.4th at 494; *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, [the reviewing court] may not substitute [its] judgment for that of the ALJ."). Reversal is warranted only if the ALJ erred, and the error affected the outcome of the disability determination. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The party challenging the ALJ's decision bears the burden of demonstrating harmful error. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

To determine whether a claimant is disabled, an ALJ must employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity"; (2) whether the claimant has a "severe medically determinable

physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity ("RFC"), she can still do her "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded by regulation on other grounds*; *see* 20 C.F.R. § 404.1520(a).

## 2. BACKGROUND

Plaintiff applied for disability insurance benefits on June 23, 2021, alleging disability beginning on February 10, 2021. The claim was denied on January 4, 2022, and denied again upon reconsideration on October 24, 2022. AR17. A hearing was held on February 1, 2024, and the ALJ issued an unfavorable decision on May 28, 2024. AR17, 31 The Appeals Council denied review on April 7, 2025. AR1. Plaintiff now seeks judicial review.

## 3. DISCUSSION

Plaintiff argues that the ALJ erred by (1) failing to give specific, clear, and convincing reasons for discounting Plaintiff's testimony about the severity of his symptoms; (2) improperly rejecting the opinions of Dr. Widlan; and (3) failing to accurately incorporate the opinions of Dr. Duthie into the RFC.

### 3.1 The ALJ erred in failing to give specific, clear, and convincing reasons for discounting Plaintiff's testimony.

When a claimant offers objective medical evidence of an impairment that could produce his symptoms, and the ALJ finds no malingering, the ALJ may

discount the claimant's testimony about the severity of those symptoms only for specific, clear, and convincing reasons. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The ALJ cleared the first step here, finding that Plaintiff's medically determinable impairments could reasonably be expected to cause "some" of the alleged symptoms. AR23. The ALJ acknowledged that Plaintiff's severe medically determinable impairments of anxiety, depression, post-traumatic stress disorder, and personality disorder resulted in findings of impaired memory, paranoid thoughts, and auditory and visual hallucinations. *Id*. So the second step governs, and it asks for more than a recitation of the medical record. An ALJ "does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). The ALJ must identify the testimony she discounts and explain what evidence undermines it. *Id*. at 493–94; *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

At the second step, the ALJ concluded that Plaintiff's limitations are not as limiting as he alleges because (1) Plaintiff's symptoms were inconsistent with the medical reports of normal exam findings, (2) Plaintiff made inconsistent statements about his symptoms, and (3) Plaintiff's daily living activities were inconsistent with his testimony. None of these reasons is clear and convincing.

First, the ALJ's reasoning that Plaintiff's testimony was inconsistent with his otherwise normal exam findings is flawed. The ALJ concluded that Plaintiff's reports of pain and fatigue symptoms, as well as his auditory and visual

hallucinations, were not corroborated by providers' routine observations that Plaintiff "was alert and oriented and in no acute distress." AR23–24, 62. This "benign presentation," the ALJ found, contradicted "the severity or frequency of his reported fatigue, pain, and psychosis symptoms[.]" AR23–24. The Commissioner argues the ALJ properly acknowledged "some adverse findings" but ultimately concluded that "the great bulk of the clinical findings were at odds with Plaintiff's description of work-preclusive mental symptoms[.]" Dkt. No. 13 at 3–4, 6.

But the fact that Plaintiff appeared "benign" in some records fails to acknowledge the nature of Plaintiff's mental health conditions, especially his hallucinations, which he testified "come[] and go[]," and where "[s]ome days are better than others." AR62–63. Plaintiff testified that there was a time his hallucinations decreased but that "over the last . . . year now" his auditory and visual hallucinations had "been getting worse." AR50. He also testified that where the visual hallucinations used to just be "shadows [on] the wall, they are now things scattering across my vision." *Id.*

The Ninth Circuit has recognized that "while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). "[T]he fact that [Plaintiff] was not exhibiting certain symptoms at the time of h[is] appointment on a particular day does not indicate that [Plaintiff] was not experiencing those symptoms generally or at other pertinent times." *Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017). A "benign presentation," AR24, "while being treated and while limiting environmental stressors" is not inconsistent with a

condition that interferes with functioning at least thirty percent of the time, often in more stressful settings. *Garrison*, 759 F.3d at 1017 ("improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace" and "[c]ycles of improvement and debilitating symptoms are a common occurrence" with mental health conditions); *see also Mary Y. v. Comm'r of Soc. Sec.*, No. C22-5050-MLP, 2022 WL 2208173, at *2 (W.D. Wash. June 21, 2022) ("evidence of improvement" at different points "does not contradict Plaintiff's testimony and does not constitute a clear and convincing reason to discount h[is] allegations.").

Discounting Plaintiff's testimony because some providers observed him with a "normal" mental status is the kind of "cherry picking" of medical evidence the Ninth Circuit has rejected. *Diedrich*, 874 F.3d at 642 (an "absence of certain symptoms" from some records "is insufficient to show a broader development that [Plaintiff] did not experience those symptoms.") (citation modified). And many records the ALJ cites are from providers who treated Plaintiff for physical conditions unrelated to his mental impairments. *See, e.g.*, AR525, 532, 1176, 1564, 1612, 1617, 1663, 1686. A non-psychiatric provider's silence about mental symptoms "says little about the extent to which [Plaintiff] may in fact have been suffering from such symptoms." *Diedrich*, 874 F.3d at 641. Notations that Plaintiff was pleasant and cooperative are also "standard or formulaic notations," not substantive "assessment[s] of h[is] behavior outside of a therapeutic or treatment-focused setting." *Dawn O. v. Comm'r of Soc. Sec.*, No. C25-5303-BAT, 2025 WL 2753623, at *3 (W.D. Wash. Sept. 29, 2025).

The Commissioner's reliance on the mental status examinations does not change the result. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony," *Smartt*, 53 F.4th at 499 (citation modified), but a normal finding contradicts testimony only if it measures what the testimony describes. The findings the Commissioner collects—"intact memory, insight, and judgment, and full alertness and orientation," Dkt. No. 13 at 3—concern cognition. Plaintiff's testimony concerns hallucinations and dissociation. The ALJ never explained why the one undermines the other. *See Nielsen v. Colvin*, No. 23-35619, 2024 WL 5200174, at *1 (9th Cir. Dec. 23, 2024) (ALJ erred by discounting psychological testimony "largely based on mental exams reflecting normal cognitive function" without explaining "why normal cognitive health indications undermine [the claimant's] testimony about her behavioral health issues.").

Second, the ALJ concluded that Plaintiff made inconsistent statements that detract from the reliability of his self-report. The ALJ remarked that Plaintiff's reasons for leaving his job as a caregiver in February 2021 were inconsistent. Plaintiff reported to Dr. Widlan during a mental health disability evaluation that he had to quit because he almost killed a client and because his post-traumatic stress disorder was flaring up. But in another evaluation with Alysa A. Ruddell, Ph.D, Plaintiff reported that he lost the job due to a conflict about pay. AR24, AR878–79.

Plaintiff argues that such "disjointed" statements are no surprise from a patient with severe mental health disorders. The Commissioner agrees but argues

that Plaintiff's statements here were not just "disjointed" but "diametrically opposed." Dkt. No. 13 at 7. On their face, the two answers differ. But the full explanation of what happened remained consistent across reports. Dr. Ruddell's examination later states Plaintiff reported "an episode where he hurt or was in danger of hurting a client" and that he has "no control over his actions at times." AR878–79 (citation modified). The full reports corroborate Plaintiff's statements about the challenges he experienced in his previous job. A difference in emphasis between two accounts of the same events is thin ground for discounting everything Plaintiff said about his symptoms.

The ALJ also pointed to Plaintiff's inconsistent reports of auditory and visual hallucinations, at one point denying them and at another point claiming he has experienced frequent hallucinations since childhood. Specifically, the ALJ highlighted Plaintiff's denial of hallucinations at medication management appointments in October 2021 and September 2022. AR24 (citing AR1420, 1698, 1701). But the absence of hallucinations at two visits is consistent with the specific and frequent hallucinations Plaintiff reported experiencing since childhood. It is also consistent with hallucinations that have become more frequent as medication has proved ineffective. *See* AR51, 873, 890, 898, 926, 928; *Garrison*, 759 F.3d at 1017; *Mary Y.*, 2022 WL 2208173, at *2. The record as a whole supports Plaintiff's testimony about his hallucinations. The Commissioner makes no argument in opposition.

Third, the ALJ reasoned that Plaintiff's testimony about his daily life activities conflicts with his testimony about the severity of his symptoms. The ALJ

pointed to Plaintiff's ability to attend school for child advocacy without issue as conflicting with his testimony "that hallucinations interfere with his functioning at least thirty percent of the day[.]" AR25.

The Commissioner argues this case mirrors *Smartt* where "the ALJ found a 'direct contradiction' between the claimant's testimony that she had not driven for several years and evidence that she routinely drove a car, whether or not the evidence suggested that driving consumed a substantial part of her day." Dkt. No. 13 at 8 (quoting 53 F.4th at 497). But no such "direct contradiction" exists here. Plaintiff's testimony that his hallucinations interfered with his functioning thirty percent of the day is consistent with his ability to attend school. And while the Court agrees with the Commissioner that there is no support in the record for Plaintiff's assertion that he is only able to attend school because the school provided accommodations, Plaintiff did report "difficulty with his schooling," that "he requires additional time with tasks and completing assignments," AR1643, and that he is "trying to get accommodations." AR1717; *see also* AR1647, 1706, 1727. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (finding substantial evidence did not support ALJ's determination that there is a conflict between plaintiff's daily activities and her testimony where she reported difficulties with the activity because of her disability).

*Smartt* also holds that the clear-and-convincing standard "requires an ALJ to show his work[.]" 53 F.4th at 499. The ALJ in *Smartt* did show her work, tying the claimant's reported activities to the capacities that competitive work demands. *Id.* at 499–500. The ALJ here did not. Instead, the ALJ named one activity as evidence

and announced a conclusion. That is not substantial evidence that there is a conflict between Plaintiff's ability to attend school and the severity of his symptoms that inhibit him thirty percent of the day. "[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

In sum, the ALJ failed to provide specific, clear and convincing reasons to reject Plaintiff's testimony, thereby committing reversible error.

**3.2 Legal standard for weighing medical opinions.**

"For nearly 40 years, [courts] have weighed medical opinions based on the extent of the doctor's relationship with the claimant." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). The opinions of treating physicians are "entitled to substantial weight," and courts generally give them more weight than any other medical opinions in the record. *Id.* (citation modified). Below treating physicians, "[i]n the middle tier[,] are doctors who examine the claimant but do not have an ongoing relationship with her." *Id.* "To reject either a treating or an examining physician's opinion, an ALJ must provide 'clear and convincing reasons,'" that are "supported by substantial evidence." *Id.* (quoting *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017)).

"The lowest-weighted tier comprises 'physicians who only review the record.'" *Id.* (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003)). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an

examining physician *or* a treating physician." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995)).

For applications filed on or after March 27, 2017, the Administration has directed ALJs not to defer to medical opinions from treating or examining sources. *See* 20 C.F.R. § 416.927(c). The Ninth Circuit recently held that these "revised social security regulations are clearly irreconcilable with [its] caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant." *Woods*, 32 F.4th at 792. Therefore, for applications filed after March 27, 2017, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

#### 3.2.1 The ALJ erred in weighing Dr. David Widlan's opinions.

Dr. Widlan completed a medical opinion on Plaintiff's mental health in January 2024. AR1481–91. Dr. Widlan reviewed Plaintiff's mental health records from February 2020–September 2022 and Dr. Duthie's evaluations from October 2018 and March 2021 and performed a mental status examination of Plaintiff. AR1481, 1483. During the mental status examination, Dr. Widlan found that Plaintiff suffers from Post-Traumatic Stress Disorder, Dissociative Identity Disorder, Major Depressive Disorder, and Unspecified Personality Disorder and that his prognosis was "quite poor." AR1485. Dr. Widlan wrote that Plaintiff "reported prominent auditory and visual hallucinations as well as paranoid ideation . . . [and] daily suicidal ideation" and dissociative episodes. He also stated Plaintiff

has a lack of energy and motivation, and "characterological dysfunction," and "presented as disheveled" and "depressed[.]" AR1483, 1485.

As it relates to employment, Dr. Widlan's examination of Plaintiff "indicated deficits in memory, concentration, and social reasoning," and while he can "accept simple instruction[,] [m]ore complex tasks would be too challenging for him." He also found that Plaintiff "is not capable of applying information, interacting with others, persisting and maintaining pace, and adapting in a competitive setting." AR1485. These "serious limitations," mean "the stress of an employment setting would significantly increase his likelihood for decompensation." *Id.* Dr. Widlan ultimately concluded that Plaintiff's impairment would "substantially interfere" with his "ability to work on a regular and sustained basis at least 20% of the time," that Plaintiff would need to miss work "20 days per month," and that he did not believe Plaintiff could "work on a regular and sustained basis in light of his . . . mental impairment[.]" AR1490.

The ALJ discounted Dr. Widlan's opinions because he "did not have an opportunity to review the updated record," instead only reviewing "the October 2018 opinion of Dr. Duthie and treatment notes from six appointments at Kitsap Mental Health." AR27–28. This reasoning is illogical and unsupported. The ALJ discredits Dr. Widlan because he did not review the full record. But Dr. Widlan conducted a direct mental examination of Plaintiff. The Commissioner cites no precedent to support discrediting an examining physician in favor of records-review physicians because the examining physician did not review the full record. And such an argument would conflict with Ninth Circuit precedent confirming that examining

physicians should generally receive more deference than non-examining physicians. *See Woods*, 32 F.4th at 789. Moreover, the finding that Dr. Widlan only reviewed “the October 2018 opinion of Dr. Duthie” is factually incorrect; Dr. Widlan reviewed Dr. Duthie’s evaluations from both October 2018 and March 2021 and, overall, he reviewed over two years’ worth of records. AR1481.

The ALJ also determined Dr. Widlan’s findings were “out of proportion to and not corroborated by the record” and provided a long list of citations. AR27–28. The ALJ found these records “do[] not corroborate the severity or frequency of [Plaintiff’s] self-report and suggests that he retains greater functional capacity than alleged and opined by Dr[.] Widlan[.]” AR28. But the ALJ does not make clear which of the records are in actual conflict with Dr. Widlan’s findings. Indeed, the first set of records cited–“mental status examinations and testing suggesting some degree of cognitive deficits with impaired memory; treatment notes noting reported auditory and visual hallucinations; and his sometimes depressed, anxious, or irritable presentation with restricted affect”–directly support Dr. Widlan’s findings. As to the rest of the cited records, an ALJ may not simply list normal findings throughout the record to discount a doctor’s diagnoses and opinions when there are also abnormal findings in the record; that tactic fails to explain *why* the normal findings are more significant than the abnormal ones. *Lisa H. v. Comm’r of Soc. Sec.*, No. 3:24-CV-05916-JNW, 2026 WL 265742, at *3 (W.D. Wash. Feb. 2, 2026); *Alexander M. v. Comm’r of Soc. Sec.*, No. C21-254-BAT, 2021 WL 3758145, at *3 (W.D. Wash. Aug. 25, 2021) (citing *Reddick*, 157 F.3d at 725). The ALJ did not make any attempt to do so here.

Nor could they as the findings cited are fully consistent with symptoms that manifest thirty percent of the day. That some records indicated Plaintiff appeared "generally intact or otherwise unremarkable," AR23, does not acknowledge the nature of Plaintiff's mental health impairments. The ALJ again erred in failing to consider how "[c]ycles of improvement and debilitating symptoms are common in mental health conditions," and improperly singled out periods of improvement to discredit a doctor's opinions, even though there was also "a significant volume of medical evidence corroborating [the doctor's] opinions." *Nielson v. Colvin*, No. 23-35619, 2024 WL 5200174, at *1 (9th Cir. Dec. 23, 2024) (citation modified).

Accordingly, without further explanation, substantial evidence does not support the ALJ's reasons for discrediting Dr. Widlan's opinions. *See Reddick*, 157 F.3d at 725 (The ALJ must "set forth [their] own interpretations and explain why they, rather than the doctors' [interpretations] are correct.").

### 3.3 The ALJ properly factored Dr. Duthie's 2021 opinion into the RFC.

Dr. Duthie completed a psychological report on Plaintiff once in October 2018 and again in December 2021. AR379–83, 1405–09. Plaintiff argues the ALJ erred in failing to accurately incorporate Dr. Duthie's persuasive December 2021 opinions into the RFC. Dkt. No. 9 at 4–5.

"At step four, the ALJ must identify plaintiff's functional limitations or restrictions, and assess his work-related abilities on a function-by-function basis, including a required narrative discussion." *Skeens v. Astrue*, 903 F. Supp. 2d 1200, 1205 (W.D. Wash. 2012) (citing 20 C.F.R. §§ 404.1545, 416.945; Social Security

Ruling (SSR) 96–8p). An RFC is the measure of "the most a claimant can do considering his or her limitations or restrictions" and must include the ALJ's consideration of "the limiting effects of all of a claimant's impairments, including those that are not severe." *Id.*

In his December 2021 examination, Dr. Duthie diagnosed Plaintiff with Panic disorder, Borderline personality disorder, and Histrionic personality disorder, but stated he is "suspicious of dissociative identity disorder recently 'discovered' in treatment." AR1408. Dr. Duthie also reported Plaintiff "has virtually no work experience and a complex characterlogical [sic] defense system, which means he will convince himself he cannot work when there is no real psychological reason to keep him from working." *Id.* Plaintiff argues "[t]his is another way of saying he has a Personality Disorder that interferes with sustaining employment," and "the symptoms he describes certainly do and have interfered with the Plaintiff maintaining employment." Dkt. No. 9 at 5.

The Commissioner responds that, despite diagnosing Plaintiff with several panic and personality disorders, Dr. Duthie "expressly did *not* opine that any of Plaintiff's mental health conditions were work-preclusive" and that Plaintiff's "mental health conditions could be accommodated in the workplace with a set of restrictions" that the ALJ incorporated into the RFC. Dkt. No. 13 at 11–12. Specifically, the Commissioner points to Dr. Duthie's finding that Plaintiff "will have no difficulty understanding and remembering simple instructions" and "mild difficulty carrying out simple instructions" and decisions, but "moderate difficulty" with more complex instructions and tasks. AR1408. Dr. Duthie also reported

Plaintiff "will have moderate difficulty interacting appropriately with the public, supervisors and coworkers . . . [and] moderate difficulty responding appropriately to usual work situations and to changes in a routine work setting." *Id.*

The ALJ determined Plaintiff "has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c)," with several specific limitations. AR22. These limitations included that Plaintiff is "able to understand, remember, and carry out *simple, repetitive* tasks," and "*no public interaction* required for job tasks; no tandem or teamwork with coworkers; and *occasional, routine* workplace changes." *Id.* (citation modified).

The Court agrees these limitations are consistent with Dr. Duthie's examination, and Plaintiff has not shown that it was unreasonable for the ALJ to conclude Dr. Duthie's examination supported the RFC. *See Skeens*, 903 F. Supp. at 1205 (finding that the ALJ's RFC assessment was consistent with limitations identified by medical provider where ALJ incorporated findings "nearly verbatim in his RFC assessment[.]"). In fact, Plaintiff later acknowledges that "Dr. Duthie may not believe the symptoms of Personality Disorders are 'real psychological reasons' interfering with the ability to work[.]" Dkt. No. 9 at 5. While Plaintiff may reasonably disagree with Dr. Duthie's findings, an ALJ may not "substitute[] her judgment for that of the doctor." *Trevizo v. Berryhill*, 871 F.3d 664, 683 (9th Cir. 2017). And though Plaintiff alleges his interpretation of Dr. Duthie's report is consistent with Dr. Widlan's, that is unrelated to whether the ALJ's RFC determination is consistent with Dr. Duthie's report.

**3.4 The ALJ's errors require reversal and remand.**

The ALJ erred in evaluating Plaintiff's testimony and Dr. Widlan's opinions for the reasons above. Neither error was harmless because, if the ALJ credits either Plaintiff's testimony or Dr. Widlan's opinions, that decision will impact the ALJ's RFC analysis.

In general, courts should remand social security cases when additional proceedings can remedy the defects in the Commissioner's decision. *Garrison*, 759 F.3d at 1019. However, in appropriate circumstances, "courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits." *Id.* Typically, courts only exercise this power "when it is clear from the record that a claimant is entitled to benefits." *Id.* In the Ninth Circuit, courts remand with instructions to award benefits "where there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the . . . [record] testimony were [properly] credited." *Id.* (quoting *Varney v. Sec. of Health & Hum. Servs.*, 859 F.2d 1396, 1401 (9th Cir.1988)) (applying "credit-as-true" rule); *see also id.* at 1020 (citing *Hammock v. Bowen*, 879 F.2d 498 (9th Cir. 1989)) (applying "credit-as-true" rule to medical opinion testimony). Here, it is unclear from the record that an award of benefits is required, and Plaintiff seeks only further proceedings. Accordingly, remand is appropriate.

## 4. CONCLUSION

Accordingly, the Court ORDERS that this matter be REVERSED and REMANDED under sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration consistent with this Order. On remand, the ALJ must reevaluate Plaintiff's testimony and Dr. Widlan's opinions, develop the record and redetermine RFC as needed. The Clerk is DIRECTED to enter judgment for Plaintiff and close this case.

Dated this 14th day of October, 2026.

Jamal N. Whitehead
United States District Judge